UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

    v.                                Case No. 18-CR-102

ALMA C. RAMIREZ,

        Defendant.

## ORDER GRANTING MOTION FOR COMPASSIONATE RELEASE

Alma C. Ramirez, originally charged in a 29-count Indictment, was ultimately convicted of Wire Fraud, Fraud and False Statements, and Aggravated Identity Theft, contrary to 18 U.S.C. § 1343, 26 U.S.C. § 7206(2), and 18 U.S.C. § 1028A(a)(1) respectively, after pleading guilty to those offenses. Ramirez was sentenced to a total term of 48 months imprisonment, 3 years of supervised release, and ordered to pay restitution in the amount of $301,370.00. The charges were based on a scheme in which Ramirez filed more than 260 false and fictitious federal income tax returns seeking more than $1.5 million in tax refunds. Judgment was entered on March 7, 2019. Ramirez began serving her sentence on May 31, 2019 and is scheduled to be released from prison on October 20, 2022, with a home detention eligibility date of May 28, 2022. Dkt. Nos. 34, 43. She is currently being held at FCI-Aliceville in Alabama.

On April 30, 2020 Ramirez filed an "Emergency Motion to Split Sentence and Serve Remainder on Home Confinement Due to COVID-19 Pandemic. The Court construed Ramirez's filing as a Motion for Compassionate Release from Custody pursuant to 18 U.S.C. § 3582(c)(1)(A) and directed the parties and U.S. Probation to respond. After considering the various responses,

the Court denied Ramirez's motion. The case is again before the Court on Ramirez's second motion for release. Upon consideration of the record now before the Court, the motion will be granted.

As applicable here, § 3582(c)(1)(A)(i) authorizes a sentencing court to reduce a defendant's sentence upon a finding that "extraordinary and compelling reasons warrant such a reduction." The sentencing court may grant such relief, however, only after the defendant has first allowed the Bureau of Prisons (BOP) to review her request and make its own recommendation to the court, or waited 30 days after submission of the request to the warden. § 3582(c)(1)(A). In addition, before granting such relief, the court must consider the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable. *Id.* The reduction must also be consistent with "applicable policy statements issued by the Sentencing Commission. *Id.*

Although the Sentencing Commission issued a policy statement implementing the "compassionate release" provision of the previous version of § 3582, the policy statement in U.S.S.G. §1B1.13 does not apply to the newer version created by the 2018 First Step Act and the Sentencing Commission has not issued a new policy statement. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020). As a result, "[d]istrict judges must operate under the statutory criteria—'extraordinary and compelling reasons'—subject to deferential appellate review." *Id.* at 1181. District judges are also expected to give the analysis of the Director of the BOP "substantial weight, even though under the First Step Act the Director's views are not controlling." *Id.*

In opposing her previous motion for compassionate release, the Government argued as a threshold matter that Ramirez had failed to meet the exhaustion requirement of § 3582(c)(1)(A). The Government noted that according to the BOP, the warden at FCI-Aliceville, where Ramirez is currently serving her sentence, received letters from Ramirez's husband and her parents seeking

her compassionate release "due to chronic illness and COVID-19 on May 19, 2020. The warden denied the request on June 16, 2020. In her order denying Ramirez's request, the warden advised her that she could appeal the denial through the Administrative Remedy Program, but it appears Ramirez did not do so. Dkt. Nos. 45 at 7; 46-1. Because Ramirez had filed her request with the Court on April 30, 2020, and had not appealed the warden's decision, the Government argued that her motion should be denied as premature. Dkt. No. 45 at 7–8.

The new version of the compassionate release statute does not appear to require a defendant to exhaust all administrative remedies before filing a motion seeking such relief from the sentencing court. By its terms, the statute seems to allow the defendant to file a motion after the earlier of either the failure of the BOP to bring a motion on the defendant's behalf following full exhaustion of those remedies, or "the lapse of 30 days from the receipt of such request by the warden of the defendant's facility." § 3582(c)(1)(A). Because Ramirez claimed she had submitted her request to the warden on April 13, 2020, and more than 30 days had passed before her attorney filed his brief in support of her motion, the Court concluded the required 30 days had lapsed and proceeded to deny her request on the merits. This may have been error since her motion was filed before the 30 days had elapsed.

Even aside from the fact that Ramirez filed her motion before waiting the required 30 days, allowing a defendant to avoid the exhaustion requirement simply by waiting 30 days after submitting a request to the warden would seem to make little sense. It defeats the purpose of requiring full exhaustion of administrative remedies with the BOP since the administrative procedure would seldom be completed within that time even if the defendant chose to appeal. In doing so, it deprives the sentencing court of the benefit of the BOP's greater knowledge of the defendant's medical condition and the ability of the institution to reasonably ensure the defendant's

3

safety. For this reason, several courts have construed § 3582(c)(1)(A) as requiring full exhaustion of administrative remedies so long as the warden responds to the defendant's request within the 30-day period. *See United States v. Lombardo*, No. 3:15-CR-286, 2020 WL 4448062, *5 (M.D. Pa. Aug. 3, 2020), and cases cited therein. Nevertheless, the Government does not raise exhaustion as a defense to Ramirez's second motion, so the Court will turn to the merits of her request.

Ramirez is 42 years old and has been diagnosed with type II diabetes, hypertension, and obesity (BMI of 30.1). Dkt. No. 61-1 at 2. Although prior to her conviction and sentence, her blood pressure readings had been as high as 163/104, it was 114/81 at her September 10, 2020 check-up. *Id.*, Dkt. No. 66 at 1. In response to her initial request for early release, Dr. Xinyu Daniel Li, the clinical director at FCI-Aliceville, offered the following opinion based on his review of Ramirez's medical records: "She suffers from mild chronic conditions, such as diabetes and hyperlipidemia. Up to now these conditions have been successfully managed by medications." Dkt. No. 46-2. At the request of the Federal Defender, Dr. Barbara Benjamin, who is board certified in family medicine also reviewed Ramirez's medical file. Dr. Benjamin noted that Ramirez has both neuropathy and kidney damage as a result of the poor control of her diabetes prior to her incarceration. Her A1C had been as high as 13.2 and her blood sugars had been documented as high as 500 on several occasions. Dkt. No. 61-1 at 1. After she began serving her sentence, however, her A1C was reduced to 6.6 by March 2020 and her glucose readings were often under 140. Dkt. No. 66 at 2. Even though her conditions have significantly improved, Dr. Benjamin states that the damage remains and that as a result "Ms. Ramirez is at a higher risk for overwhelming infection from COVID-19. Dkt. No. 61-1 at 2. As to how much higher, Dr. Benjamin does not say. This is significant since the risk of serious illness or death for most people, especially younger people, is quite low.

4

Based on her medical history, it might reasonably be argued that Ramirez is safer in prison than she would be on the outside. Her blood pressure and diabetes appear to have improved significantly since her incarceration. It is also important to note that the BOP has undertaken significant and professional efforts to curtail the virus' spread and protect the inmates in its custody. *See* generally Federal Bureau of Prisons, COVID-19 Action Plan (Mar. 13, 2020, 3:09 PM), https://www.bop.gov/resources/news/20200313_covid19.jsp. The BOP has also undertaken to implement a plan to vaccinate high risk prisoners in relatively short order, and already 3500 inmates are reported to have been vaccinated. In addition, the conditions at FCI-Aliceville appear well in control. FCI-Aliceville consists of a federal correctional facility and a satellite camp. According to the Executive Assistant, Ramirez, along with all other inmates considered high risk in the D Housing Unit in the Satellite Camp were moved to the FCI in April as a precaution when two inmates displayed COVID symptoms. At the FCI they were placed in cells where contact with others was substantially reduced. Unit D was thoroughly sanitized, and both of the inmates that showed symptoms tested negative for COVID. In August, Ramirez and the other inmates that had been transferred to the FCI were returned to the Camp. As of September 25, 2020, there had been no positive cases at the Satellite Camp where Ramirez currently resides. The population has been reduced from 270 to 156 inmates, making social distancing more possible. As of January 8, 2021, there were 11 inmates with active COVID-19 cases and 8 staff members. An additional 44 inmates and 11 staff previously tested positive and have recovered. There have been no deaths.

Despite these circumstances and the post-sentence improvement in Ramirez's health, the Government does not dispute Ramirez claim that her diabetes, in light of the pandemic, qualifies as an extraordinary and compelling reason for early release. Dkt. No. 64 at 1. The Government

5

Case 1:18-cr-00102-WCG   Filed 01/26/21   Page 5 of 7   Document 68

argues instead that the factors set forth in 18 U.S.C. § 3553 argue against release approximately two years ahead of schedule. *Id.* at 2. Quoting its earlier opposition, the Government argues:

> Given the extensive nature of Ramirez's criminal conduct, her prior criminal behavior, and the fact that she committed her offenses while on probation, a significant prison sentence was required to adequately punish the defendant, reflect the serious nature of her offenses, deter future crimes, and address Ramirez's lack of respect for the law. Even in light of the present pandemic and Ramirez's medical condition, those same factors continue to require the sentence the Court originally imposed.

Dkt. No. 64 at 2.

In light of the extraordinary and compelling reasons for release that the Government concedes exist, the Court concludes that consideration of the § 3553 sentencing factors does not warrant denying Ramirez's request to reduce her sentence to time served. Ramirez is not a threat to the safety of the public. Her crimes, while serious, did not threaten physical safety and nothing in her record suggests she is dangerous. Nor does she have rehabilitative needs that cannot be adequately met in the community. She has now served more than half of her sentence and with the addition of six months of home confinement as a condition of supervised release, she will be serving just short of a year of the total. While this is less than the full sentence imposed by the Court, it is still a significant sentence, especially when one considers the additional restrictions imposed as a result of the pandemic and the fears to which it gave rise. Ramirez will remain liable for the more than $300,000 of restitution imposed by the Court. Considered in its totality, the Court is satisfied that this is sufficient to provide just punishment and significant deterrence.

Ramirez's motion for compassionate release is therefore granted. Her previously imposed sentence of 48 months is reduced to time served. Her term of supervised release shall commence upon her release from prison and is modified to add as a condition of supervision that she undergo up to 180 days of home detention and comply with all location monitoring requirements under the

supervision of her probation office.  Ramirez shall pay for the cost of such program as directed by U.S. Probation.  All other conditions of her supervision remain in full force and effect.  Because Ramirez plans to return to her home in Alabama to rejoin her husband and family, this order is stayed for not more than fourteen days to make appropriate travel arrangements and to ensure her safe release.  Ramirez shall be released as soon as appropriate travel arrangements are made and it is safe for her to travel.  If more than fourteen days are needed to make appropriate travel arrangements, the parties shall immediately notify the Court and show cause why the stay should be continued.  Within twenty-four hours of release, Ramirez will provide the probation office for the Eastern District of Wisconsin, Green Bay Division (920-884-7782) with her address and phone number so that arrangements can be made to transfer her supervision to the appropriate district.

      **SO ORDERED** at Green Bay, Wisconsin this 26th day of January, 2021.

      s/ William C. Griesbach
      William C. Griesbach
      United States District Judge